1  **BURSOR & FISHER, P.A.**
   L. Timothy Fisher (State Bar No. 191626)
2  1990 North California Blvd., Suite 940
   Walnut Creek, CA 94596
3  Telephone: (925) 300-4455
   Facsimile:  (925) 407-2700
4  E-mail: ltfisher@bursor.com

5  *Attorneys for Plaintiff*

6

7

8

9                  **UNITED STATES DISTRICT COURT**

10                **NORTHERN DISTRICT OF CALIFORNIA**

11  | KEVIN CERVANTES, individually and on behalf of all others similarly situated, | Case No.: |
    |---|---|
12  |  |  |
13  | Plaintiff, | **CLASS ACTION COMPLAINT** |
14  | v. |  |
15  | GONG.IO LTD., | **JURY TRIAL DEMANDED** |
16  |  |  |
17  | Defendant. |  |

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Kevin Cervantes ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

### NATURE OF THE ACTION

1.     This is a class action suit brought against Defendant Gong.io Ltd. ("Defendant" or "Gong") for wiretapping communications and illegally collecting biometric information of sales associates employed by companies who contract with Defendant. These companies employ Gong, a third party, to provide sales optimization services.  Part of the suite of services offered by Gong is the recording of sales calls to create tailored sales team training programs and to optimize future sales calls with the use of AI.  The communications made during the sales calls are routed through the servers of and are used by Gong to, among other things, secretly observe, record, and analyze Website visitors' electronic communications in real time. The analysis of the recording is only possible by possessing, collecting, capturing, storing, using, and/or otherwise obtaining his and other similarly situated individuals' biometric identifiers and biometric information (referred to collectively at times as "biometrics"), to wit, their voiceprints. Defendant collects this information without the knowledge or consent of either the sales associate or the person on the other end of the sales call.  By doing so, Defendant has violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*.

2.     Plaintiff brings this action on behalf of all Illinois residents whose communications were intercepted or recorded by Gong on sales calls.

### THE PARTIES

3.     Plaintiff Kevin Cervantes is an Illinois resident and citizen who lives in Rockford, Illinois.  Mr. Cervantes worked as a sales associate for LinkedIn from March 2021 to April 2022. LinkedIn contracts with Gong to obtain sales optimization services. Mr. Cervantes was in Illinois when he made each of his sales calls for LinkedIn.  During each call, Mr. Cervantes's communications and voiceprint were intercepted in real time and were disclosed to Defendant through the wiretap. Mr. Cervantes was unaware at the time that his electronic communications were being intercepted in

real-time and would be disclosed to Gong, nor did Mr. Cervantes provide his prior consent to the same.  Mr. Cervantes was not asked for, nor did he provide his prior consent to, disclosure of this information to Gong.

4.      Defendant Gong.io Ltd. is a Delaware company with its principal place of business at 201 Spear St. 13th Floor, San Francisco, CA 94105.

5.      Gong is a marketing software-as-a-service ("SaaS") company, primarily offering sales optimization software and applications focused on sales, customer service, marketing, and analytics.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from at least one Defendant.

7.      This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in California.

8.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because Defendant resides in this District.

## STATEMENT OF FACTS

I.      **Illinois' Biometric Information Privacy Act**

9.      The use of a biometric voiceprint technology in the workplace by its nature involves serious risks.  Unlike other methods of identification, one's voice is a permanent, unique biometric identifier associated with an individual.  This exposes individuals to serious and irreversible privacy risks.  For example, if a device or database containing individuals' voiceprints is hacked, breached, or otherwise exposed, individuals have no means by which to prevent identity theft and unauthorized tracking.

10.     Recognizing the need to protect citizens from these risks, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA") in 2008, to regulate companies that collect and store biometric information, such as voiceprints. *See* Illinois House Transcript, 2008

Reg. Sess. No. 276.

11.     BIPA makes it unlawful for a company to, *inter alia*, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers and/or biometric information, unless it first:

> (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."

740 ILCS 14/15 (b).

12.     Section 15(a) of BIPA also provides:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

13.     As alleged below, Gong violated these provisions of BIPA required when it possessed, collected, captured, stored, used, or otherwise obtained the biometrics of the sales representatives of Gong's clients.

## II.     Gong Violates Illinois' Biometric Information Privacy Act

14.     Gong offers a variety of optimization services for corporate sales teams. One set of these services is Gong's "Reality Platform," which "uncovers what's happening in customer conversations so revenue teams can do more of what's working."

15.     The call recording element of the Reality Platform is based on recording real sales calls between sales reps employed by Gong's customers and their prospective sales.  All call recordings are then run through an AI software program, which analyzes each call and produces a report detailing how much time the sales rep spent talking or listening and whether the sales rep used specific key words or phrases and, if so, how many times those words and phrases were used.

16.     Gong advertises on its website that it records and analyzes sales calls.  The photos below are taken from Gong's website and describe the functionality of Gong's Call Recording AI service.





## WHY USE GONG FOR CALL RECORDING?

Gong's call recording software just works. Whichever web conferencing platform or VOIP system you use for calls, whichever CRM software (Salesforce and more) your team relies on to track sales: Gong integrates with it.

Gong also transcribes your sales call recordings. That way you can search through calls and highlight specific parts of the conversation that matter to you. It's like Google search, but for your sales calls.

Gong's AI beats the competition. That means you'll be able to turn sales recordings into actionable insights without lifting a finger. Pretty cool, huh?

But don't just take our word for it. Gong is rated #1 for call recording software on G2 Crowd by 2,000+ users.

### REASON #4
### Market Insights

What are customers saying? Which competitors are beating you and why? How are they reacting to new pricing, messaging, or feature rollout? The answer is in the conversations. Gong uses AI to turn your sales call recordings into a goldmine of actionable insights for your business and helps you double down where it works.

17.     Specifically, when a sales representative makes a call, Gong listens in and records the contents of that call in real time, as the call is occurring.  The contents of that call are transferred to Gong's servers in California, where Gong analyzes the contents of each call to provide insights to its clients.

18.     Importantly, Gong's technology must be able to recognize the voice of each sales representative and potential customer in order to effectively produce the data advertised. Accordingly, Gong needs to create a "voiceprint" of each and every sales representative whose calls it analyzes. Gong admits this in its Privacy Policy, which states that the voiceprints are created "to better distinguish" each sales representative and potential customer "in those communications they take part in."

### 1. Data Collection & Processing

**(I) Customer Data**: Our Services enable Gong customers to record, transcribe, analyze and share the contents of their sales communications, including phone calls, video conferences, email and other correspondences, as well as their CRM and customer contacts (collectively, "Customer Data").

Customer Data typically contains data which relates to identifiable individuals, such as the customer's sales representatives, prospects, and other parties either taking part in their communications or mentioned there.

In particular, at our customer's choice, we may also use their Customer Data in order to identify and create unique **"voice prints"** of each of their users, in order to better distinguish them in those communications they take part in.

we may also use their Customer Data in order to identify and create unique **"voice prints"** of each of their users, in order to better distinguish them in those communications they take part in.

19.     Previous versions of Gong's Privacy Policy state that "Certain laws also deem unique voice prints as 'biometric' data, which is subject to special protections and care."[1] Gong has since removed this language, but its collection of voiceprints continues.

20.     Gong's software analyzes each recorded call and produces a variety of reports to the sales manager. These reports break down the call by who is speaking. The software then analyzes the content of each speaker's conversation to identify whether the sales representative has adequately conveyed specific themes or phrases and to identify customer questions or concerns.

21.     Gong's software also analyzes things like the percentage of time talking versus listening and the number of questions asked. The software also analyzes the voiceprint of each individual to track "sentiments" such as hesitancy in an individual's voice.

22.     By identifying the sales representative and prospective client, respectively, and analyzing the conversation for both key phrases and vocal "sentiment," Gong collects a unique, identifiable imprint of the voice of each individual on a given sales call.  That is, Gong is not simply recording a user's voice.  Rather, Gong is creating a biometric identifier—a voiceprint—specifically tailored to a sales representative, and a user whose communications Gong is listening in on is able to be identified through their voiceprint.

23.     Problematically, when Defendant possessed, collected, captured, stored, used, or otherwise obtained the voiceprints (biometrics) of the sales representatives of Gong's various clients, it failed to do so in compliance with BIPA.  Specifically, Defendant:

   (a)     failed to develop a retention schedule and deletion guidelines for permanently destroying biometrics in violation of BIPA § 15(a);

   (b)     failed to delete any biometrics in their possession when the initial purpose for collecting or obtaining the biometrics had been satisfied in violation of BIPA § 15(a);

   (c)     failed to inform LinkedIn employees in writing that their biometrics were being collected and stored, prior to such collection and storage, in violation of BIPA § 15(b);

---

[1] Gong included this sentence in versions of its Privacy Policy published on its website from July 2020 to March 2021. Accessed via the Wayback Machine Internet Archive on April 26, 2023 https://web.archive.org/web/20200702030826/https://www.gong.io/privacy-policy/.

(d)    failed to inform LinkedIn employees in writing of the specific purpose and length of time for which their biometrics are being collected, stored, and used in violation of BIPA § 15(b); and

(e)    failed to receive a written release executed by the LinkedIn employees whose biometrics are being collected, stored, used, and otherwise obtained, prior to such collection, storage, use, and obtention, in violation of BIPA § 15(b).

## III.   Experience Of Plaintiff

24.    Plaintiff worked as a sales associate for LinkedIn from March 2021 to April 2022. LinkedIn contracts with Gong to obtain sales optimization services and did so during the course of Plaintiff's employment.

25.    Plaintiff made sales calls for LinkedIn in the course of his employment. Plaintiff was in Illinois when he made each of these sales calls.

26.    For each of the sales calls Plaintiff made, Gong analyzed the call in order to assist LinkedIn in evaluating Plaintiff's performance. As part of this process, Gong created a voiceprint for Plaintiff so that Plaintiff could be identified whenever he was speaking on the call (or any call) based solely on his voice. The analysis of Plaintiff's voice was unique to him and him alone.

27.    Thus, Plaintiff's voiceprint constitutes a "biometric identifier." 740 ILCS 14/10. Further, because Plaintiff's voiceprint was used to identify him, his voiceprint also constitutes "biometric information." *Id*.

28.    Plaintiff's voiceprint was possessed, collected, captured, stored, or otherwise obtained by Defendant on an electronic database, which LinkedIn could access and manage using Gong's software, but was also accessible to Defendant. The voiceprint was tied specifically to Plaintiff.

29.    At the time Defendant first possessed Plaintiff's biometrics, Defendant had not developed (and still has not developed) a retention schedule and deletion guidelines for permanently destroying biometrics possessed through Gong's software in violation of BIPA § 15(a).

30.    Further, because Defendant did not create a retention and deletion schedule, it failed to delete Plaintiff's biometrics after the end of Plaintiff's employment (*i.e.*, after the initial purpose for collecting or obtaining Plaintiff's biometrics had been satisfied), also in violation of BIPA § 15(a).

31.    In addition, prior to the collection to his biometrics, Defendant never (i) informed Plaintiff in writing that his biometrics were being collected and stored; (ii) informed Plaintiff in

writing of the specific purpose and length of term for which his biometrics were being collected stored, and used, and (iii) never received a written release executed by Plaintiff for the collection of Plaintiff's biometrics.  Such acts violated BIPA § 15(b).

## CLASS ACTION ALLEGATIONS

32.     Plaintiff seeks to represent a class of all Illinois residents who had their biometrics possessed, collected, captured, stored, used, and/or otherwise obtained by Defendant during the relevant statute of limitations period (the "Illinois Class").

33.     Plaintiff also seeks to represent a class of all Illinois residents who were sales representatives for LinkedIn during the relevant statute of limitations period and who had their biometrics possessed, collected, captured, stored, used, and/or otherwise obtained by Defendant (the "LinkedIn Subclass").

34.     Collectively, the Illinois Class and LinkedIn Subclass shall be referred to as the Class.

35.     Plaintiff reserves the right to modify the foregoing Class definitions as appropriate based on further investigation and discovery obtained in the case.

36.     Members of the Class are so numerous that his individual joinder herein is impracticable.  On information and belief, members of the Class number in the thousands.  The precise number of Class Members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

37.     Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.  Common legal and factual questions include, but are not limited to, whether Defendant has violated BIPA and whether Class Members are entitled to actual and/or statutory damages for the aforementioned violations.

38.     The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other Class Members, had his communications intercepted and recorded by Gong during sales calls.

39.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class Members he seeks to represent, he has retained competent counsel

experienced in prosecuting class actions, and he intends to prosecute this action vigorously.   The

interests of Class Members will be fairly and adequately protected by Plaintiff and his counsel.

40.     The class mechanism is superior to other available means for the fair and efficient

adjudication of the claims of Class Members.  Each individual Class Member may lack the resources

to undergo the burden and expense of individual prosecution of the complex and extensive litigation

necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense

to all parties and multiplies the burden on the judicial system presented by the complex legal and

factual issues of this case.  Individualized litigation also presents a potential for inconsistent or

contradictory judgments.   In contrast, the class action device presents far fewer management

difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive

supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability

issues will ensure that all claims and claimants are before this Court for consistent adjudication of the

liability issues.

## CAUSES OF ACTION

### COUNT I
**Violation of the Illinois Biometric Information Privacy Act**
**740 ILCS 14/15(a)**

41.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

42.     Plaintiff Cervantes brings this claim individually and on behalf of the Class against

Defendant.

43.     The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers

that are used to access finances or other sensitive information."  740 ILCS 14/5(c).  "For example,

social security numbers, when compromised, can be changed.  Biometrics, however, are biologically

unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened

risk for identity theft, and is likely to withdraw from biometric-facilitated transactions."  *Id.*

44.     In recognition of these concerns over the security of individuals' biometrics the Illinois

Legislature enacted BIPA, which provides, *inter alia*, that a private entity like Defendant that possess

biometrics must publish a publicly available retention schedule and guidelines for permanently destroying biometrics, as well as comply with those guidelines.  See 740 ILCS 14/15(a).

45.     Any such retention and deletion schedule must be created at the first moment of possession, and not thereafter.  *Mora v. J&M PCervantesg, Inc.*, 2022 IL App (2d) 210692 ¶ 43.

46.     Defendant is a corporation and does business in Illinois and thus qualifies as a "private entity" under BIPA.  See 740 ILCS 14/10.

47.     Plaintiff is an individual who had his "biometric identifiers" (his voiceprint) possessed by Defendant, as explained in detail above.  740 ILCS 14/10.

48.     Plaintiff's biometric identifiers were used to identify Plaintiff, and therefore, constitute "biometric information" as defined by BIPA.  740 ILCS 14/10.

49.     In direct violation of BIPA § 15(a), Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information.

50.     Defendant lacked retention schedules and guidelines for permanently destroying Plaintiff's and the Illinois Subclass's biometrics at the first moment it possessed the biometrics.

51.     Defendant failed to destroy Plaintiff's and the Class's biometrics after the initial purpose for collecting or using the biometrics had elapsed.

52.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Subclass by requiring Defendants to comply with BIPA § 15(a)'s requirements for the possession of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## COUNT II
### Violation of the Illinois Biometric Information Privacy Act
### 740 ILCS 14/15(b)

53.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

54.     Plaintiff Cervantes brings this claim individually and on behalf of the Class against Defendant.

55.     The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information."  740 ILCS 14/5(c).  "For example, social security numbers, when compromised, can be changed.  Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions."  *Id.*

56.     In recognition of these concerns over the security of individuals' biometrics the Illinois Legislature enacted BIPA, which provides, *inter alia*, that a private entity like Defendants that collect, capture, purchase, receive, store, use, or otherwise obtains biometric data must first (i) inform individuals in writing that biometrics are being collected, (ii) inform individuals in writing of the specific purpose and length of term for which such biometrics are being collected, stored, and used, and (iii) procure a written release from individuals authorizing the collection of biometrics.  740 ILCS 14/15(b).

57.     Defendant is a corporation and does business in Illinois and thus qualifies as a "private entity" under BIPA.  *See* 740 ILCS 14/10.

58.     Plaintiff is an individual who had his "biometric identifiers" (his voiceprint) possessed by Defendant, as explained in detail above.  740 ILCS 14/10.

59.     Plaintiff's biometric identifiers were used to identify Plaintiff, and therefore, constitute "biometric information" as defined by BIPA.  740 ILCS 14/10.

60.     In direct violation of each of the foregoing provisions of BIPA § 15(b), Defendants possessed, collected, captured, stored used, or otherwise obtained—without first providing notice or obtaining informed written consent—the voiceprints and associated personally identifying information of thousands of sales representatives of Gong's clients.

61.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Subclass by requiring Defendants to comply with BIPA § 15(b)'s requirements for the collection of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional

1  and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory

2  damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4)

3  reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

4  **PRAYER FOR RELIEF**

5  WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks

6  judgment against Defendant, as follows:

7  (a)  For an order certifying the Class under Rule 23, naming Plaintiff as the
      representative of the Class, and naming Plaintiff's attorneys as Class
8     Counsel to represent the Class;

9  (b)  For an order declaring that the Defendant's conduct violates the statutes
      referenced herein;
10

11  (c)  For an order finding in favor of Plaintiff and the Class on all counts asserted
      herein;

12  (d)  For compensatory, punitive, and statutory damages in amounts to be
      determined by the Court and/or jury;
13

14  (e)  For prejudgment interest on all amounts awarded;

15  (f)  For injunctive relief as pleaded or as the Court may deem proper; and

16  (g)  For an order awarding Plaintiff and the Class his reasonable attorneys' fees
      and expenses and costs of suit.

17  **DEMAND FOR TRIAL BY JURY**

18  Plaintiff demands a trial by jury of all issues so triable.

19  Dated: May 22, 2023                    Respectfully submitted,

20                                          **BURSOR & FISHER, P.A.**

21                                          By: */s/ L. Timothy Fisher*
22                                              L. Timothy Fisher

23                                          L. Timothy Fisher (State Bar No. 191626)
24                                          1990 North California Blvd., Suite 940
                                            Walnut Creek, CA 94596
25                                          Telephone: (925) 300-4455
                                            Facsimile:  (925) 407-2700
26                                          E-mail: ltfisher@bursor.com

27                                          *Attorneys for Plaintiff*

28

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    12